## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

**JONATHAN HYSLOP,**
Plaintiff,

v.

**TOWNSHIP OF WEST WINDSOR; WEST WINDSOR POLICE DEPARTMENT (named for identification only); CHIEF ROBERT GAROFOLO; DETECTIVE/SGT. JASON JONES; MERCER COUNTY; SERGEANT JAMES CHIANESE (upon information and belief); JOHN DOE JAIL STAFF 1–5; THERESA L. HILTON (non-advocacy administrative conduct only); TIMOTHY P. WARD (non-advocacy administrative conduct only); MATTHEW MARCOTTE; ANTONIO J. TOTO, ESQ.; LAW OFFICES OF ANTONIO J. TOTO; JOHN DOE OFFICERS 1-10; and JOHN DOE PROSECUTORS 1–5 (non-advocacy administrative/investigative conduct only),**
Defendants.

Civil Action No. **3:25-cv-15658-ZNQ-JTQ**
(Hon. Zahid N. Quraishi, U.S.D.J.)
(Hon. Justin T. Quinn, U.S.M.J.)

**JURY TRIAL DEMANDED**

---

# FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

Plaintiff Jonathan Hyslop ("Plaintiff" or "Hyslop"), pro se, alleges:

---

## I. NATURE OF ACTION

1. This is a civil-rights, statutory privacy, and related state-law action arising from: (a) an

April 2023 complaint-warrant arrest and municipal prosecution that continued for approximately twenty (20) months and ended in dismissal with prejudice; (b) law enforcement's solicitation/procurement/use of a neighbor's unlawfully recorded in-home communications instead of investigating the interceptor; (c) concealment and non-disclosure of material favorable evidence, including victim-denial evidence and objective video contradicting a charging theory, while continuing charges; (d) retaliation and intimidation tied to Plaintiff's protected petitioning and settlement activity; (e) interference with a key witness's attempt to provide Plaintiff a written statement; (f) seizure and retention of Plaintiff's iPhone after a later arrest; and (g) a later custodial threat/intimidation while Plaintiff was detained.

2. This First Amended and Supplemental Complaint consolidates claims, cures prior deficiencies, and adds supplemental facts occurring after the original filing pursuant to Rule 15(d).

---

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a) because this action arises under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the U.S. Constitution.

4. This Court has jurisdiction over federal Wiretap Act (Title III) claims under 18 U.S.C. §§ 2510–2520.

5. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over related New Jersey and common-law claims, including the New Jersey Wiretap Act, NJCRA, and state-law tort claims.

6. Venue is proper under 28 U.S.C. § 1391 because the events occurred in this District.

7. To the extent any pre-suit notice requirement under the New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:8-1 et seq., applies to any state-law claim(s) asserted against any public entity or public employee, Plaintiff alleges such requirements have been satisfied and/or substantially complied with, and/or are excused, and/or are subject to equitable tolling, estoppel, or late-notice relief as applicable; and Plaintiff preserves all arguments regarding substantial compliance, equitable tolling, estoppel, and/or late-notice relief to the fullest extent permitted by law.

8. Plaintiff served a Notice of Tort Claim relating to the April 4, 2023 incident in August 2025.

9. Plaintiff mailed a second Notice of Tort Claim dated September 16, 2025 relating to the August 24–25, 2025 incident by certified mail, return receipt requested, to the Township and to Mercer County. USPS tracking reflects delivery/pickup activity on or about September 19, 2025. Mercer County disputes statutory compliance based on its position regarding the clerk address and/or technical service issues; Plaintiff alleges substantial compliance, actual notice, lack of prejudice, and preserves all related defenses and equitable arguments. Plaintiff possesses USPS receipts and tracking documentation reflecting delivery/pickup activity for the certified mailing on or about September 19, 2025, and will produce the same.

10. To the extent late-notice relief is relevant to any state-law claim(s), Plaintiff alleges the Law Division denied late-notice relief by Order entered September 19, 2025, and Plaintiff timely filed an appeal in the New Jersey Appellate Division, Docket No. **A-000567-25T2**, which remains pending. Plaintiff pleads this posture to preserve disputed compliance issues and avoid waiver as to any state-law count(s) for which the TCA may apply.

---

# III. PARTIES

## Plaintiff

11. Plaintiff Jonathan Hyslop is a U.S. citizen and self-employed professional residing in West Windsor Township, New Jersey.

## Municipal / Police Defendants

12. Defendant Township of West Windsor ("Township") is a municipal entity responsible for

policies, customs, training, supervision, and discipline of its police officers, including West Windsor Police Department officers.

13. Defendant West Windsor Police Department ("WWPD") is named for identification only, to the extent deemed separately cognizable; otherwise it is a department of the Township.

14. Defendant Chief Robert Garofolo ("Garofolo") was, at all relevant times, Chief of Police and a final policymaker for WWPD on law-enforcement matters. He is sued in his individual capacity.

15. Defendant Detective/Sgt. Jason Jones ("Jones") was, at all relevant times, a sworn WWPD officer and lead investigator in the events described. He is sued in his individual capacity.

## County / Jail Defendants

16. Defendant Mercer County ("County") is a governmental entity responsible for jail operations alleged herein, including detainee property seizure/retention policies and supervision/training of jail staff. Mercer County operates the Mercer County Correctional Facility.

17. Defendant Sergeant James Chianese ("Chianese") is, upon information and belief, a County jail sergeant who threatened Plaintiff under color of law, as alleged below. Plaintiff's identification is based on Plaintiff's recollection of the threatening sergeant's name tag (including the "CHIA" prefix), OPRA-produced or OPRA-referenced rosters/logs placing Chianese in Receiving & Discharge or related intake functions during the relevant time window, and the County's failure or refusal to clearly identify the individual despite possessing records that would do so. If discovery shows a different individual committed the conduct alleged, Plaintiff will amend to conform to the evidence.

18. Defendants John Doe Jail Staff 1–5 are County employees involved in seizure/retention and custodial handling of Plaintiff's iPhone and related procedures. They are sued in their individual capacities.

## Prosecutor Defendants (Non-Advocacy Administrative Conduct Only)

19. Defendant Theresa L. Hilton ("Hilton") was, at all relevant times, Mercer County Prosecutor. Plaintiff sues Hilton in her individual capacity only for non-advocacy

administrative conduct, including ratification of closure of Plaintiff's citizen complaint seeking investigation of Marcotte.

20. Defendant Timothy P. Ward ("Ward") was, at all relevant times, an Assistant Prosecutor. Plaintiff sues Ward in his individual capacity only for non-advocacy administrative conduct, including intake closure of Plaintiff's citizen complaint without opening an investigation.

## Private Defendants

21. Defendant Matthew Marcotte ("Marcotte") was Plaintiff's next-door neighbor and a complaining witness whose statements and recordings were used by police against Plaintiff. He is sued in his personal capacity.

22. Defendant Antonio J. Toto, Esq. ("Toto") is an attorney licensed in New Jersey. At relevant times, Toto was Plaintiff's privately retained defense counsel in the municipal criminal matter. He is sued in his personal capacity for professional malpractice, breach of fiduciary duty, fraud, and related equitable tolling/concealment.

23. Defendant Law Offices of Antonio J. Toto ("Toto Firm") is a New Jersey professional business entity through which Toto practiced law and is named for vicarious liability and coverage on the state-law claims asserted against Toto.

## Doe Defendants

24. Defendants John Doe Officers 1–10 are included for WWPD and/or other law-enforcement personnel whose identities will be confirmed in discovery, including (as applicable) supervisors who approved charging/arrest steps, officers who prepared or approved charging/warrant materials, and officers who participated in arrest/processing and related custodial decisions.

25. Defendants John Doe Prosecutors 1–5 are included for individuals whose identities will be confirmed in discovery. Plaintiff sues these John Doe Prosecutors only to the extent their conduct was non-advocacy administrative or investigative conduct outside core prosecutorial advocacy (e.g., administrative intake/closure/ratification decisions and investigative or evidence-handling conduct not protected as courtroom advocacy). Plaintiff will amend to name these individuals once their identities are ascertained.

# IV. FACTUAL ALLEGATIONS

## A. April 4, 2023 Incident; No Immediate Arrest

26. On April 4, 2023, Plaintiff and his then-partner, Marisan Vicente ("Vicente"), argued inside their apartment. The dispute was verbal.

27. Vicente left the apartment and went to her car. Plaintiff went downstairs believing his belongings were in her car.

28. Security camera footage depicts Plaintiff walking to the trunk area and then toward the driver's side door. Vicente exited her vehicle voluntarily. Plaintiff did not strike Vicente.

29. At the building, Vicente followed Plaintiff toward the apartment. A neighbor, Ali Khan, observed part of the encounter and attempted to dissuade Vicente from pursuing Plaintiff further.

30. At or near Plaintiff's apartment doorway, Vicente attempted to retrieve her keys from Plaintiff; there was a brief struggle over keys. Vicente sustained minor cuts to her hand consistent with gripping keys during the struggle; Plaintiff did not intentionally cut or assault her.

31. West Windsor police arrived after 911 calls. Two neighbors called 911, including Defendant Marcotte and Ali Khan.

32. On information and belief, Marcotte called 911 and reported words to the effect of: "Yeah, he's hitting her," claiming he witnessed Plaintiff assault Vicente.

33. Police responded with firearms drawn. Plaintiff was not arrested on April 4, 2023.

34. Officers interviewed Vicente on April 4, 2023. Vicente denied Plaintiff assaulted her and indicated no assault occurred. Plaintiff cooperated.

## B. April 6, 2023 Protected Complaint; Jones as Internal Affairs Point-Person

35. On April 6, 2023, Plaintiff filed a written civilian complaint with WWPD regarding the

April 4 response, including the display of firearms. This was protected petitioning activity.

36. At all relevant times, Jones handled WWPD civilian complaints, including Plaintiff's April 6, 2023 complaint.

37. On April 7, 2023, Jones acknowledged receipt of Plaintiff's complaint in writing and requested that Plaintiff contact him to schedule an interview regarding the complaint.

38. Jones did not recuse himself from the investigation of Plaintiff despite his role in handling Plaintiff's civilian complaint. Instead, Jones proceeded to lead the investigation that resulted in Plaintiff's arrest.

## C. Video Contradicted "Confinement" Theory

39. One charge later alleged false imprisonment/confinement, claiming Plaintiff prevented Vicente from leaving by standing behind her car.

40. Surveillance footage in law enforcement possession depicted the opposite: Vicente exited voluntarily; Plaintiff moved away; Vicente initiated physical contact; and Vicente chased Plaintiff toward the building.

41. Plaintiff alleges the video undermined the confinement theory, yet the confinement charge was maintained.

## D. April 19, 2023 Jones Interview; Coaching/Contamination

42. On or about April 19, 2023, Jones conducted a recorded interview of Marcotte.

43. Before taking Marcotte's statement, Jones described what the video showed and what it did not show, and stated, in substance: "I was able to get video footage… what it doesn't give me is anything in the hallway… that's kind of where you come in… now I'm just trying to tie it together with the inside piece."

44. Plaintiff alleges this communication signaled what testimony was needed to fill an evidentiary gap.

## E. Marcotte Admissions of Recording In-Home Communications

45. During the recorded interview, Marcotte admitted he possessed recordings of Plaintiff's

in-home conversations and stated, in substance: “I have videos on my phone… from inside of our apartment… that I took…”

46. Marcotte stated he recorded “at least once a week” for months, and described frequent monitoring.

47. Marcotte stated he maintained surveillance capability to “be able to hear if it got physical,” and described a desire to prevent Plaintiff from moving to another room to avoid being heard.

48. Marcotte also made statements reflecting inaccuracies (including recording Plaintiff speaking to a fictitious “sister,” which Plaintiff does not have).

49. Plaintiff alleges these admissions establish intentional interception/recording of in-home oral communications using an electronic device, not incidental overhearing.

## F. Jones Solicited/Procured and Used the Recordings

50. After Marcotte admitted he possessed recordings, Jones did not treat Marcotte as a suspect for unlawful interception. Instead, Jones asked whether Marcotte would share the recordings; Marcotte agreed.

51. Plaintiff alleges Jones knowingly solicited, procured, and used unlawfully intercepted communications (and an interception-derived narrative) as investigative material supporting charges against Plaintiff.

## G. April 20, 2023 Victim-Denial Call; Concealment Instruction

52. On or about April 20, 2023, Jones called Vicente and recorded the conversation.

53. In that call, Vicente denied Plaintiff assaulted her and stated, in substance, “He doesn’t… put his hands on me,” and described the April 4 events as involving a struggle over keys.

54. Plaintiff alleges this recorded call contained material victim-denial evidence, but was not preserved and/or was not disclosed to Plaintiff’s defense, and was not used to reevaluate charges.

55. At the conclusion of the call, Jones instructed Vicente: "Don't let him know that we spoke."

56. Plaintiff alleges this instruction supports an inference that Jones sought to conceal victim-denial information while continuing charges.

## H. April 21, 2023 Arrest After Delay; Supervisory Knowledge/Ratification

57. No arrest occurred on April 4, 2023.

58. Jones was aware of Plaintiff's protected activity because Plaintiff filed a civilian complaint on April 6, 2023 and Jones acknowledged receipt on April 7, 2023. Jones nevertheless led the investigation that culminated in Plaintiff's arrest on April 21, 2023.

59. On April 21, 2023, after a delay of approximately three weeks, Jones arrested Plaintiff.

60. During transport, Jones told Plaintiff words to the effect that Jones had run the case by Chief Garofolo and received approval ("green light") to proceed.

61. Plaintiff alleges this reflects supervisory knowledge and/or ratification of arrest/prosecution steps in the face of victim-denial information in police possession, including (a) the April 20 victim-denial call, and (b) video contradicting the confinement theory.

62. The retaliatory chronology is as follows: Plaintiff submitted a civilian complaint on April 6, 2023; Jones acknowledged receipt on April 7, 2023; on April 20, 2023, Jones recorded the alleged victim denying that Plaintiff assaulted her; and on April 21, 2023, Jones arrested Plaintiff. Plaintiff alleges this close temporal proximity—arrest within two weeks of Jones acknowledging Plaintiff's complaint against police, and one day after Jones recorded the alleged victim denying assault—supports a plausible inference of retaliation for protected petitioning activity.

63. The April 2023 charges included at least simple assault and false imprisonment.

64. Plaintiff was processed and released with conditions, including a no-contact restriction with Vicente and restrictions affecting his residence. Plaintiff was required to undergo a psychiatric evaluation and comply with related requirements during the pendency of the case. Plaintiff was excluded from his residence for approximately thirty (30) days.

## I. Jones Interfered with Vicente's Attempt to Write Plaintiff a Letter

65. In or about May 2023, shortly after Plaintiff's arrest and imposition of no-contact/ residence-related restrictions, Jones was present inside Plaintiff's apartment while Vicente retrieved belongings and Plaintiff was excluded from the apartment.

66. During that entry, Vicente attempted to write Plaintiff a letter, including by looking for pen and paper.

67. Jones affirmatively prevented Vicente from doing so, stating words to the effect that she could not write Plaintiff a letter.

68. This incident was captured on Plaintiff's home-security video and audio system. Plaintiff possesses the original recordings, and Plaintiff will preserve the originals and associated metadata and will produce them in discovery in accordance with applicable rules and orders.

69. Jones's interference was not a lawful enforcement action against Plaintiff (who was not present and was already excluded); it was an affirmative restriction on the witness's attempt to create a written statement favorable to Plaintiff and thus an interference with Plaintiff's access to favorable evidence.

## J. Post-Arrest Victim-Denial Evidence and Continued Proceedings

70. On July 7, 2023, Vicente provided a notarized statement under penalty of perjury stating, among other things, that Plaintiff did not hit her, injuries were self-inflicted, Plaintiff did not confine her, and Plaintiff should not have been arrested.

71. On August 1, 2024, Vicente emailed Jones reiterating that Plaintiff did not hit her, Marcotte's account was fabricated, Marcotte was not present in the hallway, and she questioned whether the prosecution related to Plaintiff's complaint about police.

72. Plaintiff alleges that notwithstanding repeated victim-denial evidence and the surveillance footage undermining the confinement theory, Defendants continued the prosecution and did not take steps to correct or dismiss charge(s) lacking probable cause.

## K. MCPO Citizen Complaint; Ward/Hilton Administrative Intake Closure and Ratification

73. In or about May 2024, Plaintiff submitted a citizen complaint to the Mercer County Prosecutor's Office ("MCPO") requesting investigation of Marcotte for unlawful interception/recording, including excerpts from recorded interview materials reflecting Marcotte's admissions of repeated recordings and monitoring.

74. Plaintiff's citizen complaint sought investigation of a private actor's alleged interception activity and was not a request for courtroom advocacy in Plaintiff's municipal case.

75. On May 31, 2024, Ward responded in writing stating there was "no evidence of a crime" and closed the matter without opening an investigation.

76. Ward's declination did not meaningfully address the illegality of Marcotte's admitted interceptions or open an investigation, but instead, in substance, minimized or explained away the admissions.

77. Plaintiff alleges Ward's action was an administrative intake-screening decision (receipt/assessment/closure of a citizen complaint), not an act of courtroom advocacy.

78. Plaintiff sought supervisory review. Hilton thereafter issued a written response endorsing Ward's refusal to investigate. Plaintiff alleges Hilton's conduct was supervisory/administrative ratification of the intake closure, not courtroom advocacy.

## L. Favorable Termination

79. The April 2023 municipal charges continued for approximately twenty (20) months.

80. On December 15, 2024, the municipal matter was dismissed with prejudice. No plea was entered and no conviction resulted.

## M. Toto Representation; Malpractice, Misrepresentations, Concealment

81. Plaintiff retained Toto/Toto Firm in or about April/May 2023 for the municipal criminal matter.

82. On May 2, 2023, Plaintiff texted Toto stating, in substance, that Plaintiff wanted to sue the police department. Plaintiff alleges this triggered Toto's duty to advise Plaintiff about the New Jersey Tort Claims Act's 90-day notice requirement for certain state-law claims against public entities/employees.

83. Toto failed to advise Plaintiff to timely serve a Notice of Tort Claim, causing Plaintiff to miss or significantly delay notice steps for state-law claims against public entities, impairing Plaintiff's ability to pursue such claims.

84. Toto misrepresented to the municipal court that he had submitted Vicente's written statement favorable to Plaintiff; the judge stated on the record the court did not have the letter, and Plaintiff presented it himself.

85. Plaintiff further alleges Jones instructed Toto that defense counsel was "not allowed to contact" the alleged victim, and Toto failed to seek prompt court intervention to address that restriction.

86. Plaintiff alleges the municipal case was dismissed with prejudice on December 15, 2024, but Toto concealed the dismissal from Plaintiff until approximately July 30, 2025 (about 227 days), impairing Plaintiff's ability to timely pursue civil remedies and related notices.

87. Goldman Sachs reversed Toto's $3,000 fee in full after review. Plaintiff filed an ethics complaint with the New Jersey Office of Attorney Ethics.

88. Toto has refused to disclose malpractice insurance carrier/policy information.

## N. Post-Filing Communications with Toto

89. In November 2025, Plaintiff requested settlement discussions with Toto and requested carrier notice.

90. Toto refused to place his carrier on notice, characterized Plaintiff's claims as "frivolous," threatened to seek fees against Plaintiff, and referenced the Affidavit of Merit statute.

91. Toto's post-filing conduct—including refusal to notify his carrier, characterization of documented claims as frivolous, and threats of fee-shifting—is consistent with and supports the fraud and concealment allegations in Counts XVII–XIX, and further supports equitable tolling.

## O. August 2025 Supplemental Facts: Settlement Communication, Arrest, Phone Seizure, Jail Threat

92. In early August 2025, Plaintiff served a Notice of Tort Claim relating to the April 2023 events.

93. On August 15, 2025, Plaintiff sent Marcotte a written, pre-litigation settlement communication concerning Plaintiff's asserted civil claims, and requested insurance information and/or routing communications through counsel.

94. The August 15, 2025 communication was expressly framed as settlement/petitioning activity and did not threaten violence or any extra-legal harm.

95. On information and belief, no official proceeding was then pending in which Marcotte was a witness, and Plaintiff was aware of no such pending official proceeding. The August 15, 2025 communication did not seek to influence testimony or participation in any pending official proceeding.

96. To the extent the communication referenced Plaintiff's intent to pursue remedies, it referenced only lawful processes (including civil litigation) and Plaintiff's intent to provide truthful information and evidence to appropriate authorities as applicable). It did not threaten any false report, fabricated allegation, or misuse of process.

97. On August 24, 2025, John Doe officers arrested Plaintiff on charges including theft-by-extortion and witness tampering premised on the August 15, 2025 settlement communication. Plaintiff alleges the arrest lacked probable cause and was retaliatory and, at minimum, that no probable cause existed for any witness-tampering theory given the absence of a pending proceeding and the absence of any attempt to influence testimony or participation.

98. During arrest/processing, law enforcement seized Plaintiff's iPhone; it has remained retained.

99. On or about August 25, 2025, at the Mercer County Correctional Facility, Chianese (upon information and belief) threatened Plaintiff with violence tied to Plaintiff's complaints/communications, stating: "If you ever complain about us in a message like that again, you come back into custody here. We're going to fuck you up." Plaintiff alleges this threat was intended to chill protected speech and petitioning.

## P. OPRA Obstruction / Identification Withholding (County)

100. After the August 25, 2025 jail threat, Plaintiff sought to identify the threatening sergeant and preserve evidence through records requests under New Jersey's Open Public Records Act ("OPRA"), including requests for intake/Receiving & Discharge rosters, logs, and related records that would identify supervising staff on duty during the relevant time window.

101. Plaintiff alleges Mercer County possesses rosters, logs, assignment sheets, and/or video that would immediately identify the threatening sergeant and corroborate the threat, but County officials failed or refused to meaningfully identify the individual despite Plaintiff's requests.

102. Plaintiff further alleges that the County used reference-number handling, "duplicate request" characterizations, and/or other administrative tactics that delayed or impeded timely production and meaningful identification.

103. Plaintiff alleges these delays created a foreseeable risk that jail surveillance footage and related logs would be overwritten under routine retention practices, despite the foreseeability of litigation.

104. Plaintiff pleads the foregoing facts to explain Plaintiff's "upon information and belief" identification of Chianese and to preserve issues relating to County custom/ratification, evidence preservation, and any appropriate remedies based on the evidence developed in discovery.

## Q. Home-Security Evidence Preservation (Authentication)

105. Plaintiff controls the original home-security video/audio referenced above and maintains the originals in a manner designed to preserve authenticity.

106. Plaintiff has preserved, and will continue to preserve, the original files and associated metadata and will maintain chain-of-custody suitable for authentication. Plaintiff will produce the recordings in discovery in accordance with applicable rules and orders.

## R. Tort Claims Act Notices (August 2025 Events) — Service / Dispute

107. As alleged in ¶9, Plaintiff mailed a second Notice of Tort Claim dated September 16, 2025 relating to the August 24–25, 2025 arrest and custodial conduct. Plaintiff preserves

all arguments regarding substantial compliance, tolling, estoppel, and late-notice relief as applicable.

---

# V. CLAIMS FOR RELIEF

## COUNT I

**42 U.S.C. § 1983 — MALICIOUS PROSECUTION (Fourth Amendment)**
*(Against Jones, Garofolo, John Doe Officers 1–10)*

108. Plaintiff incorporates paragraphs 1–107.

109. Defendants initiated and/or caused the initiation and continuation of criminal proceedings against Plaintiff arising from April 2023.

110. The proceedings terminated in Plaintiff's favor when they were dismissed with prejudice on December 15, 2024.

111. Defendants lacked probable cause to initiate and continue criminal proceedings as to specific charges, including: (a) the false imprisonment/confinement charge, which was directly contradicted by surveillance footage depicting Vicente exiting her vehicle voluntarily, initiating physical contact with Plaintiff, and pursuing Plaintiff toward the building; and (b) the simple assault charge, which was contradicted by Vicente's on-scene denial, her April 20, 2023 recorded statement to Jones ("He doesn't put his hands on me"), her July 7, 2023 notarized statement under penalty of perjury, and her August 1, 2024 email reiterating no assault occurred.

112. After Defendants recorded the April 20, 2023 victim-denial call and thereafter received Vicente's July 7, 2023 notarized statement and August 1, 2024 email, Defendants possessed victim-denial evidence negating probable cause for the assault charge and contradicting the confinement theory, yet continued the prosecution for approximately twenty months without taking steps to correct or dismiss charges lacking probable cause.

113. Defendants acted with malice and improper purpose, including retaliation for Plaintiff's April 6, 2023 civilian complaint, which Jones acknowledged in writing on April 7, 2023.

114. Plaintiff suffered deprivations of liberty consistent with a Fourth Amendment seizure as a consequence of legal process, including arrest and processing; post-arrest release conditions; repeated court appearances; no-contact and residence-related restrictions affecting living arrangements; required psychiatric evaluation; and compliance with court-imposed conditions over the pendency of the criminal case.

115. Probable cause is charge-specific. Plaintiff challenges the false imprisonment/confinement and simple assault charges as having been initiated and/or continued without probable cause.

## COUNT II

**42 U.S.C. § 1983 — FALSE ARREST / FALSE IMPRISONMENT (Fourth Amendment)**
*(Against John Doe Officers 1–10)*

116. Plaintiff incorporates paragraphs 1–107.

117. On August 24, 2025, John Doe Officers arrested Plaintiff without probable cause based on Plaintiff's August 15, 2025 settlement/petitioning communication.

118. Plaintiff alleges no probable cause existed for the August 24, 2025 arrest. The August 15, 2025 communication, read as a whole, was a pre-litigation settlement/petitioning communication (including insurance/counsel routing) and did not threaten violence or any extra-legal harm; did not threaten any false accusation or fabricated report; and did not attempt to obtain property by means of any wrongful or unlawful threat, but instead sought civil resolution through insurance and counsel routing and referenced only lawful processes (including civil litigation and providing truthful information and evidence to appropriate authorities as applicable). Plaintiff further alleges no probable cause existed for any witness-tampering theory because no official proceeding was pending, and the communication did not attempt to influence, intimidate, or prevent testimony or participation in any proceeding.

119. Plaintiff was detained, processed, and subjected to restrictions, depriving him of liberty without lawful justification.

## COUNT III

**42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION**
*(Against Jones, Garofolo, John Doe Officers 1–10, Chianese)*

120. Plaintiff incorporates paragraphs 1–107.

121. Plaintiff engaged in protected activity including: (a) filing a police complaint about the April 4 response (April 6, 2023), which Jones acknowledged on April 7, 2023; (b) sending a litigation-related settlement communication (August 15, 2025); and (c) making protected complaints/communications while in custody.

122. Defendants took adverse actions including: (a) initiating/continuing the April 2023 prosecution and arresting Plaintiff on April 21, 2023; (b) arresting Plaintiff on August 24, 2025 based on the settlement communication; (c) interfering with a key witness's attempt to provide Plaintiff a written statement; and (d) threatening Plaintiff on August 25, 2025 to deter future complaints and protected activity.

123. The retaliatory timeline is explicit: Plaintiff filed a civilian complaint on April 6, 2023; Jones acknowledged receipt on April 7, 2023; on April 20, 2023 Jones recorded the alleged victim denying assault; and on April 21, 2023 Jones arrested Plaintiff. Plaintiff alleges protected activity was a substantial or motivating factor, supported by temporal proximity, Jones's handling of the complaint and role as lead investigator, concealment conduct, supervisory approval/ratification, and the persistence of prosecution despite repeated victim-denial evidence.

## COUNT IV

**42 U.S.C. § 1983 — FABRICATION / USE OF FALSE EVIDENCE (Fourteenth Amendment)**
*(Against Jones, Garofolo, Marcotte, John Doe Officers 1–10)*

124. Plaintiff incorporates paragraphs 1–107.

125. Plaintiff alleges Defendants fabricated and/or used false evidence and manufactured probable cause, including by coaching a key witness to fill an evidentiary gap, maintaining a confinement narrative contradicted by video, and using an interception-derived narrative while disregarding reliability problems and victim-denial evidence.

126. Plaintiff alleges fabricated/manufactured evidence was used to initiate and maintain criminal process against Plaintiff, causing deprivation of liberty.

127. Plaintiff alleges this claim did not accrue until favorable termination of the criminal case, including because earlier litigation would have risked interfering with the ongoing criminal matter and would have implicated doctrines limiting civil claims during pending prosecution. See, e.g., *McDonough v. Smith*, 139 S. Ct. 2149 (2019).

## COUNT V

### 42 U.S.C. § 1983 — SUPPRESSION / INTERFERENCE WITH MATERIAL FAVORABLE EVIDENCE AND ACCESS TO A KEY WITNESS (Fourteenth Amendment)

*(Against Jones, Garofolo, John Doe Officers 1–10)*

128. Plaintiff incorporates paragraphs 1–107.

129. Plaintiff alleges Defendants possessed and sidelined material favorable evidence, including the recorded victim-denial call and repeated written victim-denial evidence, while continuing prosecution.

130. Jones's concealment instruction ("Don't let him know that we spoke"), combined with the alleged restriction on defense access to the alleged victim and Jones's interference with Vicente's attempt to write Plaintiff a letter, supports an inference of intentional interference with Plaintiff's ability to present favorable evidence and challenge probable cause.

## COUNT VI

### 42 U.S.C. § 1983 — ABUSE OF PROCESS (Fourth/Fourteenth Amendments)

*(Against Jones, Garofolo, John Doe Officers 1–10)*

131. Plaintiff incorporates paragraphs 1–107.

132. Plaintiff alleges Defendants used criminal process for improper purposes, including punishing and deterring Plaintiff's protected complaints and petitioning, by maintaining charges after receipt of victim-denial evidence and using arrest/prosecution to burden Plaintiff.

## COUNT VII

### 42 U.S.C. § 1983 — UNREASONABLE SEIZURE/RETENTION OF PROPERTY (Fourth Amendment) AND DEPRIVATION WITHOUT DUE PROCESS (Fourteenth Amendment)

*(Against Mercer County, John Doe Jail Staff 1–5)*

133. Plaintiff incorporates paragraphs 1–107.

134. Plaintiff's iPhone was seized during the August 2025 arrest/processing and has been retained.

135. Plaintiff alleges continued retention is unreasonable, particularly where investigative needs could be satisfied through imaging/extraction, and where retention substantially interferes with Plaintiff's communications and litigation preparation.

136. Plaintiff alleges County procedures for return of seized phones were constitutionally inadequate and caused prolonged deprivation without due process.

## COUNT VIII

**MONELL LIABILITY — 42 U.S.C. § 1983**
*(Against Township of West Windsor and Mercer County)*

137. Plaintiff incorporates paragraphs 1–107.

138. Plaintiff alleges the Township maintained policies/customs and/or a failure-to-train/supervise discipline regime that was a moving force behind the constitutional violations alleged, including: (a) failing to train and supervise officers on preserving and disclosing victim-denial evidence and correcting charges contradicted by objective video; (b) permitting solicitation/procurement/use of unlawfully intercepted communications without investigation of the interceptor; and (c) permitting retaliation against complainants.

139. Policymaker knowledge/ratification: Plaintiff alleges Jones represented that Garofolo approved ("green lighted") proceeding with arrest/prosecution despite victim-denial evidence and video undermining a charged theory, supporting policymaker knowledge and ratification of the challenged conduct.

140. Internal Affairs Custom and Ratification: Plaintiff alleges the Township maintained a custom of failing to take corrective action in response to civilian complaints, enabling officers to continue violating rights without consequence. This custom is evidenced by: (a) the Township's failure to take any corrective action after Plaintiff's April 6, 2023 complaint regarding the April 4 response; (b) Jones's continued leadership role in investigating and prosecuting the case despite being the subject of Plaintiff's complaint, with no recusal or meaningful supervisory intervention; (c) Jones's April 21, 2023 statement that Chief Garofolo gave him the "green light" to arrest Plaintiff despite victim-denial evidence in police possession, including the April 20 victim-denial call and video contradicting the confinement theory; (d) Garofolo's supervisory approval and ratification of proceeding with arrest and prosecution despite the foregoing; (e) the Township's failure to correct or terminate charges over approximately twenty months despite repeated victim-denial evidence and objective video contradicting charged theories; and (f) the August 2025 arrest following Plaintiff's tort-claim notice and settlement communication, further evidencing a pattern of retaliation against complainants and protected activity without corrective intervention. Plaintiff alleges this custom and ratification were a moving force behind the violations alleged.

141. Plaintiff alleges the County maintained a pattern, practice, and custom that was a moving force behind the constitutional violations alleged, including: (a) tolerating intimidation and threats by jail staff against detainees who complain; (b) maintaining deficient practices for promptly identifying involved staff when complaints arise; (c) failing to preserve evidence when litigation is foreseeable, including delayed OPRA responses creating a foreseeable risk that surveillance footage and logs would be overwritten under routine retention practices; and (d) maintaining constitutionally inadequate procedures for return of seized property to detainees.

142. Plaintiff alleges a direct causal nexus between these policies/customs/failures and Plaintiff's injuries, including prolonged prosecution/restrictions despite victim-denial evidence, retaliatory actions, intimidation/threats, and prolonged deprivation of property without adequate process.

## COUNT IX

### 42 U.S.C. § 1983 — CONSPIRACY TO DEPRIVE CIVIL RIGHTS

*(Against Jones, Garofolo, Marcotte, Ward, Hilton, John Does)*
*(Ward/Hilton: non-advocacy administrative conduct only)*

143. Plaintiff incorporates paragraphs 1–107.

144. Plaintiff alleges Defendants reached an understanding to deprive Plaintiff of constitutional rights through coordinated conduct, including use of coached/contaminated witness information, solicitation/procurement/use of unlawfully intercepted communications, concealment/sidelining of victim-denial evidence, interference with a key witness's ability to provide favorable information, and retaliatory use of criminal process.

145. As to Ward and Hilton, Plaintiff alleges their administrative intake closure and ratification insulated a cooperating witness whose unlawful interceptions were solicited/used by police, thereby contributing to continuation of the violations.

## COUNT X

**FEDERAL WIRETAP ACT (Title III) — 18 U.S.C. §§ 2511 and 2520**

*(Against Marcotte; and against Jones/John Does for intentional use/disclosure/procurement)*

146. Plaintiff incorporates paragraphs 1–107.

147. Plaintiff's in-home conversations constitute "oral communications" under 18 U.S.C. § 2510(2), as Plaintiff had a reasonable expectation of privacy inside his apartment.

148. Marcotte intentionally intercepted and recorded Plaintiff's oral communications without consent, as evidenced by recorded admissions of videos "from inside of our apartment," repeated recordings over months, and deliberate maintenance of surveillance capability.

149. Jones and/or John Does intentionally solicited, procured, used, and/or disclosed intercepted communications, including by requesting and receiving the recordings and using interception-derived information in charging decisions and related processes.

150. This action is timely under 18 U.S.C. § 2520(e) because Plaintiff could not reasonably have discovered the scope and evidentiary use of the interceptions until obtaining relevant materials during and after the criminal process.

## COUNT XI

**NEW JERSEY WIRETAP ACT — N.J.S.A. 2A:156A-3 et seq.**

*(Against Marcotte; and against Jones/John Does for use/disclosure/procurement)*

151. Plaintiff incorporates paragraphs 1–107.

152. Marcotte's interception/recording of oral communications at private places without consent violated New Jersey's Wiretapping and Electronic Surveillance Control Act.

153. Jones and/or John Does knowingly procured, used, and/or disclosed unlawfully intercepted communications in violation of New Jersey law, including by requesting, receiving, and relying on the recordings and interception-derived information.

## COUNT XII

**NEW JERSEY CIVIL RIGHTS ACT (NJCRA), N.J.S.A. 10:6-1 et seq.**
*(Against individual governmental defendants)*

154. Plaintiff incorporates paragraphs 1–107.

155. Defendants' conduct violated Plaintiff's rights under the New Jersey Constitution, including rights to free speech/petition, due process, and protections against malicious prosecution and unlawful seizures.

## COUNT XIII

**FIRST AMENDMENT RETALIATION — NON-ADVOCACY ADMINISTRATIVE CONDUCT**
*(Against Ward and Hilton, Individual Capacities Only)*

156. Plaintiff incorporates paragraphs 1–107.

157. Plaintiff engaged in protected petitioning by submitting a citizen complaint to MCPO requesting investigation of Marcotte for unlawful interception/recording, supported by transcript admissions.

158. Ward's May 31, 2024 intake closure and Hilton's subsequent ratification were administrative actions, not courtroom advocacy.

159. Plaintiff alleges these actions were retaliatory and/or were taken with deliberate indifference to Plaintiff's rights by protecting a cooperating witness whose alleged unlawful interceptions had been solicited/used against Plaintiff.

## COUNT XIV

**42 U.S.C. § 1983 — FAILURE TO INTERVENE / SUPERVISORY LIABILITY**
*(Against Garofolo and John Doe Officers 1–10)*

160. Plaintiff incorporates paragraphs 1–107.

161. Defendants knew, or were deliberately indifferent to, ongoing constitutional violations alleged herein, including reliance on coached/false evidence, concealment/sidelining of victim-denial information, and retaliation against protected petitioning.

162. Defendants had a realistic opportunity to stop, correct, or prevent the violations and failed to do so.

163. Garofolo, as policymaker/supervisor, knew of and ratified arrest/prosecution steps despite victim-denial evidence and failed to correct subordinates' conduct.

## COUNT XV

**CONVERSION / REPLEVIN (State Law; Alternative)**
*(Against Mercer County and John Doe custodians of Plaintiff's iPhone)*

164. Plaintiff incorporates paragraphs 1–107.

165. Plaintiff alleges Defendants exercised unauthorized control over Plaintiff's iPhone through prolonged retention beyond any reasonable evidentiary need and without adequate return procedures.

## COUNT XVI

**INTRUSION UPON SECLUSION (New Jersey Common Law)**
*(Against Marcotte)*

166. Plaintiff incorporates paragraphs 1–107.

167. Marcotte intentionally intruded upon Plaintiff's private affairs by repeated monitoring and recording of in-home communications for surveillance purposes, which would be highly offensive to a reasonable person.

## COUNT XVII

**LEGAL MALPRACTICE AND BREACH OF FIDUCIARY DUTY (State Law)**
*(Against Toto and Toto Firm)*

168. Plaintiff incorporates paragraphs 1–107.

169. Toto owed Plaintiff duties of competence, diligence, communication, loyalty, and truthfulness.

170. Toto breached those duties by, among other things: (a) failing to advise of the Tort Claims Act notice requirement after being informed Plaintiff wanted to sue police; (b) misrepresenting submission of Vicente's written statement favorable to Plaintiff; (c) failing to challenge restrictions on defense access to the alleged victim; (d) concealing dismissal with prejudice for approximately 227 days; and (e) refusing to disclose insurance information.

171. The breaches alleged are within the common knowledge of lay jurors and do not require expert testimony; to the extent an affidavit of merit is deemed required, Plaintiff will comply within the time permitted by law after Defendants appear and answer.

172. Plaintiff suffered damages including loss/impairment of state-law claims, delayed pursuit of civil remedies, and other harms to be proven at trial.

## COUNT XVIII

**COMMON LAW FRAUD (State Law)**
*(Against Toto and Toto Firm)*

173. Plaintiff incorporates paragraphs 1–107.

174. Toto intentionally misrepresented and concealed material facts with the intent to deceive Plaintiff, upon which Plaintiff justifiably relied to his detriment.

175. Toto's misrepresentations and omissions include: (a) failing to advise Plaintiff regarding urgent notice deadlines while Plaintiff stated intent to sue police; (b) misrepresenting and/or concealing the status and termination of the criminal case; and (c) conduct intended to discourage Plaintiff from timely pursuing civil remedies.

176. As a proximate result, Plaintiff suffered damages including impairment of claims, delay, and related losses.

### COUNT XIX

**FRAUDULENT CONCEALMENT AND EQUITABLE TOLLING (State Law)**
*(Against Toto and Toto Firm)*

177. Plaintiff incorporates paragraphs 1–107.

178. Toto engaged in fraudulent concealment of material facts, which gives rise to an independent claim and supports equitable tolling/estoppel of statutes of limitation or notice requirements that would otherwise bar Plaintiff's claims.

179. Toto concealed from Plaintiff that the criminal case was dismissed with prejudice on December 15, 2024, despite a duty to disclose arising from the attorney-client relationship.

180. Toto's concealment prevented Plaintiff from timely asserting claims and serving notices; accordingly, applicable deadlines should be tolled and Defendants estopped from asserting time-bar defenses to the extent legally warranted.

---

## VI. DAMAGES

181. Plaintiff seeks compensatory damages (economic and non-economic), including loss of liberty, lost income, reputational harm, emotional distress, and out-of-pocket losses caused by the seizure/retention of Plaintiff's iPhone, including, as a self-employed professional, lost clients, contracts, and opportunities.

182. Plaintiff seeks statutory damages under 18 U.S.C. § 2520 and N.J.S.A. 2A:156A-24.

183. Plaintiff seeks punitive damages against individual defendants where legally available.

---

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment:

A. Awarding compensatory damages in an amount to be proven at trial;

B. Awarding punitive damages where permitted by law;

C. Awarding statutory damages under 18 U.S.C. § 2520 and N.J.S.A. 2A:156A-24;

D. Granting declaratory relief as appropriate, including a declaration that Defendants' actions violated Plaintiff's constitutional and statutory rights;

E. Granting equitable relief including an order equitably tolling any statute of limitations or notice requirement that would otherwise bar any of Plaintiff's claims, and/or estopping Defendants from asserting such defenses, in light of the fraudulent concealment and extraordinary circumstances described;

F. Awarding allowable costs; and attorneys' fees only to the extent Plaintiff later becomes represented and fees are otherwise recoverable under 42 U.S.C. § 1988, 18 U.S.C. § 2520, or other applicable law; and

G. Granting such other relief as the Court deems just and proper.

---

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Jonathan Hyslop
JONATHAN HYSLOP, Plaintiff Pro Se
43 Princeton Hightstown Rd. #1209
Princeton Junction, NJ 08550
Phone: (415) 515-3360
Email: jonathanhysloplegal@gmail.com

DATED: January 7, 2026